IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTONIO BAILON, *et al.,*

        Plaintiffs,

    v.

SEOK AM#1 CORP, *et al.*,

        Defendants.

CASE NO. C09-05483JRC

ORDER GRANTING MOTION TO DISMISS AND MOTION FOR PROTECTIVE ORDER

The matter is before the court on plaintiffs' motion to dismiss and motion for protective order. Doc. #10. The issues before this court turn largely around the question of whether the immigration status of plaintiffs/employees is at all relevant to the claims those employees filed against their defendant/employer under the Fair Labor Standards Act ("FSLA") 29 U.S.C. §§ 201 – 219 and the Washington Minimum Wage Act ("MWA") RCW 49.48.010 et. seq. Defendants wish to pursue discovery against plaintiffs arguing that their alleged status as illegal aliens prevents them from pursuing claims for unfair employment practices. After evaluating the case law and statutes on this question, this court concludes that the plaintiffs' immigration status is

ORDER (C09-5483 JRC) - 1

irrelevant to any valid claim or defense and that public policy prohibits defendants from pursuing such discovery.

## BACKGROUND.

Plaintiffs allege that they are former employees of the restaurant Wok Teriyaki II in Gig Harbor, Washington. They seek compensation against their employer for alleged failure to pay overtime wages, failure to pay final wages, and failure to pay minimum wage during 2006, 2007, and 2008. Doc. # 1. Defendant corporations allegedly operated the restaurant and Defendant Sung Ki ("Thomas") Min allegedly owned, operated and managed these corporations.

Defendants filed a joint answer denying that they had violated the law and affirmatively alleged a variety of defenses including waiver, estoppel, unclean hands, laches, statute of limitation, "wanton and willful misconduct," "deceptive misrepresentation of his legal standing," "acting in consort and/or conspiracy", lack of standing, and failure to mitigate. None of the alleged affirmative defenses include any factual allegations other than an allegation that "none of the plaintiffs were legally authorized to work in the United States." Doc. # 6. Defendants also allege counterclaims against each plaintiff on the grounds that plaintiffs knowingly misrepresented their legal standing to be employed, and allege a counterclaim[1] against plaintiff Miguel Esquivel on the grounds that he had the exclusive right to manage, supervise and control the other plaintiffs and is therefore allegedly liable to defendants for contribution and/or indemnity. Doc. #6.

Plaintiffs brought a motion to dismiss counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) and to strike certain defenses pursuant to Fed. R. Civ. P. 12(f). Plaintiffs also request a

---

[1] Since this claim is being brought by the defendants against an opposing party, it will be considered a counterclaim throughout this order, even though it is referred to in the answer as crossclaim. See Fed. R. Civ. P. 13.

ORDER (C09-5483 JRC) - 2

protective order pursuant to Fed. R. Civ. P. 26(f) to prevent defendants from pursuing discovery regarding plaintiffs' immigration status. Doc. #10.

In response to this motion, defendants requested a continuance to pursue discovery before fully responding to either motion. Doc. #15. This court granted a brief continuance of plaintiffs' motion and ordered defendants to file a response that addressed three issues:

- Whether alleged undocumented-worker immigration status provides a defense or counterclaim in an FLSA/MWA case for work already performed.

- Whether FLSA/MWA defendants have a right to seek indemnity or contribution from third parties such as co-workers or joint employers.

- Whether FLSA/MWA claims are subject to personal defenses such as waiver, estoppel, unclean hands, laches, "independent intervening conduct of" third party, failure to mitigate damages, "equal[] or exceed[ing] fault of plaintiffs," proximate cause of third party, failure to pay taxes, or a public policy punitive damages defense. Doc. #14.

Both parties submitted supplemental briefing addressing these issues.

## MOTION TO DISMISS/MOTION TO STRIKE - STANDARD OF REVIEW.

In order to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must determine whether the non-moving party could prove any set of facts that would entitle her or him to relief. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). When considering a Fed. R. Civ. P. 12(b)(6) motion, the court does not evaluate the facts themselves, but rather it takes all factual allegations set forth in the counterclaim as true and construes them in the light most favorable to the non-moving party. *See Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996).

In order to grant a motion to strike pursuant to Fed. R. Civ. P. 12(f), the court must evaluate whether defenses in question are cognizable under any set of facts. "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

After carefully reviewing the case law and the facts as alleged by the parties, it appears that plaintiffs' immigration status is irrelevant to any issue in this case. While the Supreme Court ruled that immigration status bars recover for future wages, s*ee Hoffman Plastics Compounds v. NLRB*, 535 U.S. 137, 149 (2002), if the wage claim involves damages for past work performed, then the immigration status of the plaintiff is irrelevant. *See Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063-69 (9th Cir. 1004)(discussing *Hoffman*, Title VII claims for back wages are not barred because of employee's immigration status).

Furthermore, although there is no Washington case directly on point, Washington courts have consistently construed the MWA in the same manner as the FLSA. *See, e.g., Hisle v. Todd Pacific Shipyards Corp.,* 151 Wn.2d 853, 862, 93 P.3d 108 (2004); *Chelan County Deputy Sheriffs' Assoc. v. County of Chelan,* 109 Wn. 2d 282292-93, 745 P.2d 1 (1987). While not binding, in the absence of state authority to the contrary, the federal precedent is persuasive on this issue. This appears to be consistent with the Washington State Department of Labor and Industries' policy, as stated by its Director in May of 2002, following the *Hoffman Plastics* decision. The Washington State Director of Labor & Industries, Gary Moore, issued the following statement:

> The 1972 law that revamped Washington's workers' compensation system is explicit: All workers must have coverage. Both employers and workers contribute to the insurance fund. The Department of Labor and Industries is responsible for protecting worker safety, ensuring that all workers be

> paid at least the minimum wage and providing workers with medical care
> and wage replacement when an injury or an occupational disease prevents
> them from doing their job. The agency has and will continue to do all that
> without regard to the worker's immigration status. Exhibit 2 to Schmitt
> Decl. (Statement by Gary Moore, Director of the Department of Labor &
> Industries, May 21, 2002)  Doc. # 11.

Therefore, there appear to be no set of facts that would support any of defendants' allegations that plaintiffs' claims under the FLSA are barred by their immigration status. Furthermore, defendants have cited no authority for the proposition that the WMA claims should be barred because of plaintiffs' immigration status either. Accordingly, plaintiffs' motion to dismiss defendants' counterclaim alleging that plaintiffs lacked "standing to be lawfully employed" is hereby GRANTED.

Next, plaintiffs request that this court dismiss defendants' counterclaim for indemnity and contribution against Plaintiff Miguel A. Esquivel, who allegedly managed, supervised and controlled all other plaintiffs while employed by the restaurant. For the reasons set forth below, that motion is GRANTED, as well.

The Court is unaware of any case in the Ninth Circuit regarding whether an individual supervisor may be held liable for contribution or indemnity to another defendant who may be liable for violations of the FLSA. But several other courts of appeals in other circuits have rejected claims seeking indemnity or contribution under those circumstances. *See LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir.1986) (affirming dismissal of employer's counterclaim against supervisory personnel for indemnity of plaintiffs' claims under FLSA, and stating, "No cause of action for indemnity by an employer against its employees who violate the Act appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory"; *Lyle v. Food Lion*, 954 F.2d 984, 987 (4th Cir.1992) (affirming dismissal of employer's counterclaim and third-party complaint for indemnity against plaintiff-

supervisor for plaintiffs' FLSA claims*); Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir.1992) (holding employer's third-party complaint seeking indemnity from employee for alleged FLSA violations was preempted); *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 144 (2d Cir.1999) (affirming dismissal of corporation chairman's claims for contribution and indemnification against his co-owner and corporation's manager and vice president).

The Court is persuaded that it should dismiss defendants' counterclaim seeking indemnity or contribution in this case. To rule otherwise would frustrate Congress' purpose in enacting the FLSA, since an employer who believed that any violation of the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute. *LeCompte*, 780 F.2d at 1264.

Defendants argue they are entitled to assert their contribution and indemnity claim(s) based on state law, *citing* RCW 49.52.050, 49.52.070, *Morgan v. Kingen*, 166 Wn.2d 526 (2009), and *Ellerman v. Centerpoint Prepress*, 143 Wn.2d 514 (2001). Defendants' argument misses the mark. This authority stands for the proposition that <u>plaintiffs</u> may have a claim against an individual supervisor, but does not stand for the proposition that another defendant who may be liable for wage claims has a contribution or indemnity claim against someone similarly situated.

Furthermore, the FLSA's preclusion of contribution and indemnity claims preempts state law. "Creation of a state-law-based indemnity remedy on behalf of employers would not serve the congressional purpose of creating and maintaining minimum standards of employment throughout the national economy." *LeCompte*, 780 F.2d at 1264.

In sum, plaintiffs' motion to dismiss is GRANTED; defendants' counterclaim based on contribution or indemnity against Plaintiff Esquivel is DISMISSED.

ORDER (C09-5483 JRC) - 6

Plaintiffs' motion to strike affirmative defenses 1 and 3 through 11 (other than the 2nd half of affirmative defense 10 regarding alleged good faith) can be summarized as either being based on the incorrect assumption that plaintiffs' immigration status bars recovery or that the defenses are insufficient as a matter of law. Doc. #10.

Fed. R. Civ. P. 12(f) permits a court, on motion of a party, to "order stricken from any pleading any insufficient defense." Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A A. Charles Alan Wright & Arthur R. Miller , Federal Practice & Procedure § 1380, 647 (2d Ed.1990). Nevertheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." Id. § 1381 at 665. Motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Colaprico v. Sunmicrosystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991); *Naton v. Bank of California*, 72 F.R.D. 550, 551 n. 4 (N.D.Cal.1976).

In their motion, plaintiffs argue defendants' affirmative defenses 1-11 (with the exception of defense number 2 and the last half of defense number 10) are legally insufficient. Rather than respond to each of plaintiffs' arguments, defendants' again request a continuance until further discovery occurs. Defendants' counsel concedes that "it is probable that certain of their defenses should be dismissed following discovery or through facilitated negotiation." Defendants' Opposition Brief, Doc.# 16, at 2.

The court's concern is that plaintiffs should not be subjected to discovery regarding plaintiffs' immigration status under the guise of finding evidence that may somehow touch upon a claimed affirmative defense. While it is unnecessary for the defendants to lay out all the facts

giving rise to a possible defense before discovery has commenced, defendants have the obligation to show that these affirmative defenses somehow are cognizable legal theories that would preclude one or more of the plaintiffs from recovering. Plaintiffs lay out the issues raised in their motion regarding why the stated affirmative defenses are meritless and defendants have not responded to any of these legal arguments, other than to ask that further discovery take place before the court decides the issue. Nevertheless, defendants have not articulated what benefit discovery may have to assist the court in addressing any of these issues. Therefore, the court is left with what has been presented by plaintiffs regarding the viability of the claimed defenses.

After carefully reviewing the matter, the undersigned finds all of defendants' affirmative defenses (with the exception of defense number 2 and the last half of defense number 10) have no possible bearing on the subject matter of the litigation. The court is persuaded by plaintiffs' arguments. For instance, the equitable defenses of waiver, estoppels, laches, and unclean hands, are not appropriate defenses to FLSA claims, *Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000); *Roberston v. Alaska Juneau Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 700 (1945); *Fleming v. Carpenters/Contractors Cooperation Comm., Inc.*, 834 F. Supp. 323, 328 (S.D. Cal. 1993). After careful consideration, the court also adopts the analysis provided by plaintiff on the balance of the affirmative defenses, as well.

Therefore, plaintiffs' motion to strike defendants' affirmative defenses is GRANTED WITHOUT PREJUDICE. In the event defendants can further articulate some factual or legal basis upon which a cognizable defense may be affirmatively alleged, defendants may seek leave of the court to so allege, pursuant to Fed. R. Civ. P. 15(a)(2).

## MOTION FOR A PROTECTIVE ORDER – STANDARD OF REVIEW.

Fed. R. Civ. P. 26 permits discovery of matters relevant to the subject matter involved in the pending litigation. However, this principle is subject to limitation. Fed. R. Civ. P. 26(c) allows for protective orders in the interest of justice to protect a party from annoyance, embarrassment, or oppression. The burden is on the party seeking the protective order. "'If a court finds a particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.'" *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063-64 (9th Cir. 2004) (quoting *Phillips ex rel. Estates of Byrd v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)).

In the process of briefing this issue, the parties appear to agree that the plaintiffs' immigration status is irrelevant to claims for wages for work already performed and that a protective order is appropriate. Accordingly, it is ORDERED that defendants shall not seek information in discovery relating to plaintiffs' immigration status, including but not limited to immigration documents, passports, visas, social security numbers, tax identification numbers, and information about national origin and entry into the United States.

Dated this 9th day of December, 2009.

J. Richard Creatura
United States Magistrate Judge